IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

DIAN HUDSON, et al.                                                                          PLAINTIFFS

&

UNITED STATES OF AMERICA                                                  PLAINTIFF-INTERVENOR

V.                                                              CIVIL ACTION NO. 3:63CV3382-DPJ-FKB

LEAKE COUNTY SCHOOL BOARD, et al.                                                 DEFENDANTS

## ORDER

This forty-six-year-old desegregation case is before the Court on motions to intervene filed by an organization known as the Concerned Citizens Against Consolidation ("CCAC") and the Scott County School District ("SCSD") (collectively the "Movants"). The existing parties, Intervenor the United States of America and Defendant Leake County School Board ("LCSB"), oppose the motion. Having fully considered the parties' submissions and the applicable authority, the Court finds that the motions to intervene [6, 10] should be denied.

**I.      Facts/Procedural History**[1]

This desegregation case was first filed in 1963 by a class of African American parents against the LCSB. The United States soon intervened, and the parties have not changed in more than forty years. Although the parties have remained the same, the case has not been completely dormant.

On May 15, 1967, the United States District Court for the Southern District of Mississippi, Jackson Division, ordered the LCSB to desegregate its schools by way of a freedom

---

[1] This factual background draws heavily from those portions of the United States' memoranda of law which Movants generally accept and from subsequently submitted record evidence.

of choice plan. However, on November 7, 1969, the United States Court of Appeals for the Fifth Circuit determined that Leake County, Mississippi, maintained "a dual school system based on race or color." *United States v. Hinds County Sch. Bd.*, 423 F.2d 1264, 1267 (5th Cir. 1969) (citing *Alexander v. Holmes County Bd. of Educ.*, 396 U.S. 19 (1969)). The court ordered the LCSB to dismantle its dual school system pursuant to a plan prepared by the United States Office of Education, Department of Health, Education and Welfare ("HEW"). *Id.*

The HEW plan created six attendance zones: Thomastown, Carthage, Edinburg, South Leake, Murphy, and Lena. Pursuant to a motion seeking modification of the 1969 desegregation order, the Fifth Circuit, on January 27, 1971, issued an order modifying the original attendance zones. Of significance to this dispute, the 1971 Order reconfigured the southeast corner of the South Leake Zone as a separate attendance zone and assigned the students in that zone to neighboring Scott County (hereinafter "the Scott County Zone"). Based on this order, the students in the Scott County Zone were transferred to attend the Sebastopol Attendance Center, which lies at the heart of the present dispute.

The plan remained unchanged until October 23, 1986, when the court entered an order closing the only school in the Lena Zone and restructuring grades in the Carthage Zone. The 1986 Order also merged the Lena Zone with the South Leake Zone, leaving only five attendance zones: Thomastown, Carthage, Edinburg, South Leake, and Scott County.

In 2007, the United States initiated a review of the LCSB's compliance with the desegregation order (including the 1971 and 1986 modifications). At the heart of the investigation was an inter-district transfer policy that allowed students from other parts of Leake County to transfer to the Scott County Zone to attend the Sebastopol Attendance Center.

2

According to the United States, a disproportionate number of white students were allowed to transfer thus frustrating the goal of attaining a unitary system.

The United States began its review by requesting information from the LCSB and the SCSD and by visiting schools in the districts during a May 2008 site visit. The site visit included an inspection of the Sebastopol Attendance Center where the inter-district transfer policy was discussed. Also in May 2008, the United States held two public meetings in Leake County that collectively drew approximately 300 attendees. Consolidation was discussed during the meetings and reported in a local paper. Following the May 2008 site visit, the United States requested additional information and conducted a second site visit in August 2009. During the August 2009 site visit, the United States again visited the Sebastopol Attendance Center.

The United States concluded that the LCSB had not achieved unitary status and continued to operate schools that were racially identifiable based on student assignment and other factors. Accordingly, on May 7, 2010, the United States and the LCSB submitted a joint motion seeking modification of the desegregation order. According to the motion,

> During the 2009-10 school year, over 100 white students who live in the Scott County Zone and would otherwise attend schools in the South Leake Zone (which is approximately 85% black) instead attend the Sebastopol Attendance Center in Scott County (which is approximately 75% white).

Mot. [2] ¶ 4. To address this concern, the parties sought an order to, *inter alia*, merge the Scott County Zone back into the South Leake Zone. The United States's proposal would reassign all students that reside in the Scott County Zone to the appropriate school in the South Leake Zone for the 2010-2011 school year. All rising seniors in the Scott County Zone would have the option to attend the Sebastopol Attendance Center in the 2010-2011 school year as long as they

3

provide their own transportation. The order granting the joint motion was signed by this Court on May 13, 2010, and electronically filed on May 17, 2010 ("May 2010 Order").

The present dispute relates to separate motions to intervene filed by the CCAC and the SCSD. On May 24, 2010, the CCAC moved to intervene claiming to "represent adult citizens and parents who reside in Leake County, Mississippi, who have attended or whose children have attended, currently attend, or desire to attend in the future, the Sebastopol Attendance Center in Sebastopol, Mississippi, and other persons interested in supporting and perpetuating the Sebastopol Attendance Center." Mot. to Intervene [6] ¶ 1. According to its motion, the CCAC seeks to vacate the May 2010 Order to allow "students of the Scott County Zone to attend the School that they and their parents and grandparents have been attending for over a hundred years." *Id.* ¶ 9.

Following the CCAC, the SCSD moved to intervene on June 11, 2010. In its motion, the SCSD suggests that the loss of the Leake County students to Leake County schools would result in "the loss of future MAEP funds, the cost of teacher over-staffing, and its effect on the future viability of the Sebastopol Attendance Center." Mem. in Supp. of Mot. to Intervene [11] ¶ 14.[2]

Noting that all parties made numerous unsupported factual assertions in their submissions, the Court invited the parties to supplement the record. The parties sought and received a short extension to comply, and supplementation was complete on July 21, 2010.

---

[2]The SCSD's motion created a conflict leading to the recusal of the Honorable Tom S. Lee, who entered the May 2010 Order. The case was reassigned to the undersigned.

Although the exact date is not in the record, the parties have informed the Court that they believe the new school year begins the first or second week of August. The Court is prepared to rule.[3]

## II. Analysis

The CCAC and the SCSD invoke Rule 24 of the Federal Rules of Civil Procedure and seek intervention of right, or, alternatively, permissive intervention.[4] The Court will first consider intervention of right.

---

[3]The material facts upon which this ruling is based are not disputed, and the Court therefore concludes that no hearing is necessary. *Jones v. Caddo Parish Sch. Bd.*, 735 F.2d 923, 926 (5th Cir. 1984) ("No hearing was necessary because the matters apparent of record support the district court's determination, there being neither challenge to them nor proffered facts to justify or explain the evident untimeliness which they reflect.").

[4]Rule 24 states in relevant part as follows:

(a) Intervention of Right. On timely motion, the court must permit anyone to intervene who:
. . . .
    (2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

(b) Permissive Intervention.

    (1) In General. On timely motion, the court may permit anyone to intervene who:
    . . . .
        (B) has a claim or defense that shares with the main action a common question of law or fact.
    . . . .

    (3) Delay or Prejudice. In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights.

Fed. R. Civ. P. 24.

A.      Intervention of Right under Rule 24(a)

Movants make no argument that any statute grants them an unconditional right to intervene. As such, they seek intervention pursuant to Rule 24(a)(2). Intervention under Rule 24(a)(2) is proper when:

> (1) the motion to intervene is timely; (2) the potential intervener asserts an interest that is related to the property or transaction that forms the basis of the controversy in the case into which she seeks to intervene; (3) the disposition of that case may impair or impede the potential intervener's ability to protect her interest; and    (4) the existing parties do not adequately represent the potential intervener's interest.

*Doe v. Glickman*, 256 F.3d 371, 375 (5th Cir. 2001). "The Proposed Intervenors must establish the four conditions and bear the burden of demonstrating its [sic] entitlement to intervene." *Jones v. Caddo Parish Sch. Bd.*, 204 F.R.D. 97, 100 (W.D. La. 2001) (citing *United States v. Tex. E. Transmission Corp.*, 923 F.2d 410, 414 (5th Cir. 1991)). In the absence of any of the four elements cited above, intervention as of right must be denied. *Graham v. Evangeline Parish Sch. Bd.*, 132 F. App'x 507, 511 (5th Cir. 2005) (citing *United States v. Franklin Parish Sch. Bd.*, 47 F.3d 755, 758 (5th Cir. 1995)).

1.      Timeliness

Four factors guide the court in determining whether a motion to intervene has been timely filed:

> (1) how long the potential intervener knew or reasonably should have known of her stake in the case into which she seeks to intervene; (2) the prejudice, if any, the existing parties may suffer because the potential intervener failed to intervene when she knew or reasonably should have known of her stake in that case; (3) the prejudice, if any, the potential intervener may suffer if the court does not let her intervene; and (4) any unusual circumstances that weigh in favor of or against a finding of timeliness.

*Glickman*, 256 F.3d at 376. "These factors are a framework and not a formula for determining

timeliness. A motion to intervene may still be timely even if all the factors do not weigh in favor of a finding of timeliness." *Id*. (citations and quotation marks omitted). "Timeliness is to be determined from all the circumstances." *Caddo Parish Sch. Bd.*, 735 F.2d at 927 (citing *NAACP v. New York*, 413 U.S. 345, 365 (1973)).

Movants contend that they moved expeditiously after learning of the joint motion and May 2010 Order. However, that is not the test. As discussed in *Jones v. Caddo Parish School Board*, knowledge of the actual outcome of a case is not determinative. 735 F.2d at 934. The test is "'[t]he length of time during which the would-be intervenor actually knew or reasonably should have known of his interest in the case.'" *Id*. (citing *Stallworth v. Monsanto Co.*, 558 F.2d 257, 264 (5th Cir. 1977)). The Fifth Circuit has "equated knowledge of 'an interest in the case' with knowledge of an interest which '*might be* affected by' the outcome of the case." *Id*. (emphasis added). For example, in *Caddo Parish School Board*, the court affirmed denial of a motion to intervene as untimely where the movant knew of the pendency of the case and knew of public comment regarding the plan but "did not know the United States would agree to this decree which she claims left too many predominantly one-race schools attended by too many black students." *Id*. at 932.

      a.      The CCAC

The United States contends that the CCAC was on notice due to the existence of the desegregation order and as a result of the two public meetings conducted by attorneys from the Department of Justice ("DOJ"). The United States further contends that the CCAC members had actual knowledge of the consolidation efforts as reflected in its name–Concerned Citizens Against Consolidation. However, the supplemental record reflects that the CCAC was formed in

7

response to Governor Haley Barbour's unrelated school consolidation recommendations. Moreover, while well attended, the public meetings were advertised by fliers and word of mouth, and the record is not sufficient for the Court to find that any members of the CCAC actually knew they had occurred.

Nevertheless, other factors defeat the CCAC's position. In particular, the timeliness inquiry also requires the CCAC to plead and prove prejudice. *United States v. Covington County Sch. Dist.*, 499 F.3d 464, 466 (5th Cir. 2007). On this note, the CCAC falls well short. As discussed below, the only interest asserted by the CCAC is the preservation of what it tacitly concedes is a segregated system. The Fifth Circuit does not recognize this as a valid interest, and no prejudice is therefore shown. *See generally Franklin Parish Sch. Bd.*, 47 F.3d at 756 (discussing legally cognizable interests). Conversely, allowing intervention at this late date would prejudice the LCSD and the United States.[5] The parties have crafted a plan designed to promote a unitary system, and allowing intervention so close to the beginning of the new school year would in all likelihood delay implementation for another year. *See Caddo Parish Sch. Bd.*, 735 F.2d at 935 (discussing prejudice to existing parties). Finally, the CCAC has identified no "unusual circumstances."

b. The SCSD

The SCSD faces an even stiffer challenge to timeliness. First, the present case has affected Scott County's interests for more than forty years. In 1969, the Fifth Circuit ordered the desegregation of the Leake County School System pursuant to a plan that assigned students in

---

[5]It seems obvious that this matter must be decided sufficiently in advance of the first day of school to allow the SCSD and the LCSB time to adequately address the numerous issues that the May 2010 Order will impact.

the former Scott County Zone to schools in Leake County. The SCSD did not intervene. As part of the continuing jurisdiction of this Court, an order was entered in 1971 that reconfigured the attendance zones and assigned certain Leake County students to a "Scott County Zone" serviced by the Sebastopol Attendance Center. Again, the SCSD made no attempt to intervene at that time. Later, in 1986, the order was again modified to merge certain attendance zones in Leake County. This history demonstrates two things: (1) the order has affected the SCSD for decades; and (2) the SCSD was or at least should have been aware that the order remained subject to modification pursuant to the Court's continuing jurisdiction.[6]

Against this backdrop, the SCSD should have known that its interests might be affected when, in February 2008, the SCSD's counsel received a letter seeking information regarding inter-district transfers with Leake County. The letter stated:

> The District's data reveals that through the acceptance of inter-district transfers, the District is reducing desegregation efforts in both Scott County District *and in at least one of the sending districts*. . . . The effect of the inter-district transfers is *most evident at Sebastopol Attendance Center*. . . .
>
> We are interested in obtaining more information about several of the justifications provided for inter-district transfers. In particular, some students stated that they were assigned to Sebastopol "based on attendance zone of federal court order" and other students, including many from *Leake County*, justified their transfers as "pursuant to federal court order." We are not aware of a desegregation order in Scott County having any such provisions, and those justifications appear to be *citing a federal court order applicable in Leake County*."

Ex. A to United States' Stipulation [21] (emphasis added). The letter then requests a host of information "about inter-district transfers generally and as they pertain to the relationship

---

[6]The SCSD is also subject to a desegregation order that maintains jurisdiction to ensure full compliance. *See* Ex. A to United States' Resp. [16]. The United States contends that SCSD's inter-district transfer policy violates that order.

between Scott County and Leake County." *Id*. The list of requested information includes, "[a] copy of all federal court orders that implicate Scott County School District, directly or indirectly . . . ." *Id*.

The SCSD, through counsel, requested additional time to comply, prompting another DOJ letter in which an inspection was requested. Again, the issue of inter-district transfers was front and center. The letter requested compliance with the February 2008 letter prior to the inspection and also stated:

> In addition to the documents previously requested in my February 7, 2008 letter, please also provide information and documents explaining how inter-district transfer students are transported to Scott County schools, specifically how students residing in the Sebastopol attendance zone in Leake County are transported to Sebastopol (e.g., if transportation is provided, which county pays for it, what is the school bus route, etc.)?
>
> It is important that I review the district's inter-district transfer information before visiting the district the first week in April.

*Id*. Following the inspection and the public meetings held in Leake County, DOJ lawyers again visited the Sebastopol Attendance Center in August 2009. The SCSD's own record evidence demonstrates that it was aware that DOJ was inquiring into the practice of allowing inter-district transfers.

The SCSD should have known during this process that its purported rights "might be affected." *Caddo Parish Sch. Bd.*, 735 F.2d at 934. Yet, the SCSD did nothing and instead waited until the May 2010 Order was entered before moving to intervene. The situation is at least similar to the one in *Caddo Parish School Board*, where the putative intervenor knew that the case existed but was not pleased with the final provisions of the decree, and the Fifth Circuit affirmed the district court's denial of intervention as of right.

Finally, the SCSD moved to intervene approximately one month before the start of the 2010-2011 school year, and completed its supplementation of the record on July 21, 2010. The timing of the motion leaves little time to address the substantive issues SCSD wishes to raise in its proffered motion to vacate the May 2010 Order, and it will substantially prejudice the LCSB and the United States in their efforts to arrive at an agreement and implement an order promoting a unitary system for the coming school year. *See id.* at 935. The SCSD's interests are not as apparent or immediate. Finally, the SCSD has offered no unusual circumstances that would counter these factors. In conclusion, Movants have failed to carry their burden of demonstrating that their motions were timely filed.

        2.        Whether Movants State a Cognizable Interest Impaired by the May 2010 Order

An intervenor must also demonstrate a legally cognizable interest and that the order would impair that interest. *Glickman*, 256 F.3d at 375. The Fifth Circuit requires that the interest be a "direct, substantial, legally protectable interest in the proceedings." *United States v. Perry County Bd. of Educ.*, 567 F.2d 277, 279 (5th Cir. 1978) (citation omitted). Moreover, "the interest [must] be one which the *substantive* law recognizes as belonging to or being owned by the applicant." *Saldano v. Roach*, 363 F.3d 545, 551 (5th Cir. 2004) (quoting *New Orleans Pub. Serv., Inc. v. United Gas Pipe Line Co.*, 732 F.2d 452, 464 (5th Cir. 1984)).

In the context of desegregation cases, the Fifth Circuit has explained that "the parental interest which justifies intervention is an interest in achieving a desegregated school system." *United States v. Franklin Parish Sch. Bd.*, 47 F.3d 755, 757 (5th Cir. 1995) (affirming denial of motion to intervene) (citing *Pate v. Dade County Sch. Bd.*, 588 F.2d 501, 503 (5th Cir. 1979) (affirming denial of motion to intervene filed on behalf of parents opposed to desegregation

11

order and holding that "[t]he parental interest that justifies permissive intervention is an interest in a desegregated school system"); *Perry County Bd. of Educ.*, 567 F.2d at 279 (affirming denial of motion to intervene based on board's policy decision because petitioners failed to allege that school board action impeded achievement of unitary school system)); *see also Graham v. Evangeline Parish Sch. Bd.*, 132 F. App'x 507, 512 (5th Cir. 2005) (affirming denial of motion to intervene and holding that opposition to consolidation did not raise cognizable legal interest absent contention that "consolidation would hamper the avowed goal of eliminating the vestiges of past discrimination").

a. The CCAC's Interest

While the actual timing of the CCAC motion may be a close question, it has wholly failed to demonstrate a legally cognizable interest. According to the joint motion and the United States's subsequent submissions, (1) Leake County maintains a segregated school system; (2) the Sebastopol Attendance Center and its Leake County counterparts remain racially identifiable; (3) the transfer policy has frustrated the goal of achieving a unitary system; and (4) the May 2010 order of consolidation will advance that goal. The CCAC makes no effort to rebut any of these contentions and essentially concedes the points. Instead, the CCAC seeks to vacate the May 2010 Order so that "students of the Scott County Zone [may] attend the School that they and their parents and grandparents have been attending for over a hundred years." Mot. to Intervene [6] ¶ 9. While the parents may wish to send their children to the same school they attended, the right to continued attendance in a segregated school system is not a legal interest for which the Fifth Circuit allows intervention. *See, e.g.*, *Franklin Parish Sch. Bd.*, 47 F.3d at 756 (affirming denial of intervention where intervenor sought to oppose consolidation).

Finally, the lack of a legally cognizable interest is a central focus of the United States's memorandum. Yet, the CCAC's Reply [13] essentially ignores the point, offering no authority (or even argument) suggesting that it has a legally cognizable interest in maintaining the status quo. As such, the CCAC has further failed to show that the May 2010 Order would impair a valid interest. As stated previously, the failure to prove any one of the Rule 24(a)(2) elements is fatal. *Id.* at 758. The CCAC has not demonstrated a valid interest or that the May 2010 Order impairs a valid interest. Thus, even if timely filed, the motion to intervene would fail.

b. The SCSD's Interest

Like the CCAC, the SCSD does not take issue with the United States's contention that Leake County maintains a segregated school system, that Sebastopol Attendance Center remains racially identifiable, and that reversal of the inter-district transfer policy will promote a unitary system. Instead, the SCSD argues that the May 2010 Order will ultimately result in the loss of funding in future school years.[7]

The United States argues in response that these interests are not legally cognizable because

> [t]he Fifth Circuit adheres to a narrow reading of "interest" for a would-be intervenor in a school desegregation case. *Perry County Bd. of Educ.*, 567 F.2d at 279. In order to intervene as of right, the SCSD "must demonstrate an interest in a desegregated [Leake County School System]" and explain "the way in which the goal of a unitary system had allegedly been frustrated." *Perry County Bd. of Educ.*, 567 F.2d at 279, *quoting Hines v. Rapides Parish Sch. Bd.*, 479 F.2d 762, 765 (5th Cir. 1973).

Resp. [16] at 12. The SCSD filed no reply and failed to rebut this argument. Having apparently

---

[7]The parties have stipulated that, pursuant to Mississippi law, funding for the 2010-2011 school year will not be affected. *See* Mississippi Accountability & Adequate Education Program Act of 1997, MISS. CODE ANN. § 37-151-7 (2007).

13

conceded the point, the Court finds that the motion, even if timely, would fail on this additional basis.[8]

        3.      Whether Existing Parties Adequately Represent Movants

Again as to the CCAC, it has failed to demonstrate that the existing parties will not adequately represent the only legitimate interest they could have offered–achieving a unitary school district. The CCAC does not advocate this interest in its submissions.

The issue is less clear as to the SCSD, because unlike the CCAC members, the SCSD is not represented by the LCSB. Still, the SCSD's motion fails for the other reasons addressed above.

    B.    Permissive Intervention

Permissive intervention under Rule 24(b) is "wholly discretionary." *Kneeland v. Nat'l Collegiate Athletic Ass'n*, 806 F.2d 1285, 1289 (5th Cir. 1987). Thus, "'even [where] there is common question of law or fact, or the requirements of 24(b) are otherwise satisfied,' a district court may deny permissive intervention if such would 'unduly delay or prejudice the adjudication of the rights of the original parties.'" *Graham*, 132 F. App'x at 513-14 (citing *Kneeland*, 806 F.2d at 1289). In the present case, the Court declines to grant permissive

---

[8]Although not contested by the SCSD, the Court notes that this interpretation may expand the existing precedent. The cases relied upon by the United States address the purported interests of individuals or parental groups rather than interested school boards. *See*, *e.g.*, *Perry v. County Bd. of Educ.*, 567 F.2d at 279 (affirming denial of motion to intervene filed by parents of school children). In light of *Brown v. Board of Education* and its progeny, it seems unlikely that a local school board's interest in maintaining funding would trump the goal of achieving a unitary system. Nevertheless, it should be noted that time is short, and this issue has not been further explored by the parties or the Court. Finally, neither factual findings nor further record development appear necessary as review would be de novo, *see Glickman*, 256 F.3d at 376; the SCSD's purported interests are based on the application of state law; and none of the parties suggest the need for additional fact finding.

14

intervention for the same reasons it finds no basis for intervention under Rule 24(a)(2).

### III. Conclusion

For the reasons stated above, the Court finds that the motions to intervene [6, 10] should be denied.

**SO ORDERED AND ADJUDGED** this the 22nd day of July, 2010.

                                      s/ *Daniel P. Jordan III*
                                      UNITED STATES DISTRICT JUDGE