**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF MISSISSIPPI**
**NORTHERN DIVISION**

**DIAN HUDSON, et al.** **PLAINTIFFS**

**AND**

**UNITED STATES OF AMERICA** **PLAINTIFF-INTERVENOR**

**VS.** **CIVIL ACTION NO. 3:63CV3382-DPJ-ASH**

**LEAKE COUNTY SCHOOL BOARD, et al.** **DEFENDANTS**

---

MEMORANDUM IN SUPPORT OF UNOPPOSED
MOTION FOR DECLARATION OF UNITARY STATUS

---

Defendant Leake County School Board (the "District") submits this Motion for Declaration of Unitary Status and requests the Court enter the proposed Order (Appendix A) granting the District full unitary status and dismissing this case with prejudice. After 60 years of oversight, the District has demonstrated that it has eliminated the vestiges of the prior *de jure* segregation to the extent practicable and achieved unitary status. The District, therefore, moves for this Court to declare the District unitary and dissolve all remaining injunctions against the District. The United States does not oppose the Motion.

## I. Procedural History

Over six decades ago, on March 7, 1963, the Private Plaintiffs filed this school desegregation lawsuit against the District, among others, alleging that it operated a

dual school system based on race. On March 4, 1964, the Court issued a preliminary injunction, temporarily restraining and enjoining the District "from requiring segregation of the races in any school under their supervision," and ordered the District to submit a desegregation plan. [3], p. 7. On July 7, 1964, the Court entered an order making the preliminary injunction a permanent injunction. *Id.,* p. 9.

The United States was granted leave to participate as an amicus curia on June 28, 1965. *Id.* While the archived docket sheet does not indicate that the United States was granted leave to participate as a Plaintiff-Intervenor, it has been so listed and treated as such since at least August 1, 1968. [3], p. 21.

On May 15, 1967, the Court entered an additional order "permanently enjoin[ing]" the District "from discriminating on the basis of race or color in the operation" of the District. [3], p. 14. The Court further ordered the District to "take affirmative action to disestablish all school segregation and to eliminate the effects of the dual school system. *Id.* The Court also ordered the District to begin filing reports with the Court. Thereafter, in compliance with the May 1967 Order, the District began filing annual reports with the Court on the desegregation status of its schools. *See, e.g.,* [3], pp. 21-22.

On May 19, 1969, the Court further ordered the District to "take positive and affirmative steps to achieve complete desegregation of school faculties so that by the 1970-71 school year the pattern of teacher assignments to each school is not identifiable as tailored for a heavy concentration of either Negro or white pupils." [3], p. 22. The Private Plaintiffs appealed this order to the Fifth Circuit Court of

Appeals, which reversed and rendered the case on July 3, 1969. *Id.*, p. 19. The decision required the District to collaborate with the U.S. Department of Health, Education, and Welfare to prepare plans to disestablish the dual school system. *Id.* The Fifth Circuit retained jurisdiction until disestablishment of the dual school system was achieved. *Id.,* p. 20. The Fifth Circuit transferred jurisdiction back to the District Court on January 10, 1974. *Id.,* p. 24. The District filed its last report with the Court on November 11, 1974. *Id.*

Since 1969, the Parties have returned to Court on several occasions for modifications of the District's desegregation plan (the "Plan"). Specifically, the November 9, 1969 Plan was modified by orders dated January 27, 1971, October 23, 1986, May 13, 2010, and March 23, 2011. Exhibit A. "The 1971 Order modified the District's attendance zones, merged the Murphy Zone with the South Leake Zone, and created the Scott County Zone. The 1986 Order closed the Lena school, restructured grades in the Carthage Zone, and merged the Lena Zone with the South Leake Zone. The 2010 Order merged the Scott County Zone with the South Leake Zone leaving four attendance zones: Thomastown, Carthage, Edinburg, and South Leake." [26], p. 1, n.1. The 2011 Order closed the Thomastown Attendance Center and merged its students into the Carthage Zone. *Id.*, p. 3. The 2011 Order also closed the Edinburgh Attendance Center, merging its students south of the Pearl River with the South Leake Zone and the remainder with the Carthage Zone. *Id.*

## II. Unitary Status

After 60 plus years of judicial and federal oversight, the District has become unitary with respect to each factor established in *Green v. County School Board,* 391 U.S. 420 (1968): (1) student assignment, including school assignment, student transfers, classroom assignment; (2) faculty and staff assignment; (3) transportation; (4) facilities; and (5) extracurricular activities.

Since 1969, the District has taken substantial steps to implement the Court's orders. For example, at the start of the 1969-1970 school year, all schools in the District were essentially one-race schools and deviated significantly from the District-wide racial composition of the student body. The information below is taken from the June 2, 1969 Report to the Court.

| SCHOOL | BLACK | WHITE | OTHER | TOTAL |
|---|---|---|---|---|
| Carthage Attendance Center (1-12) | 60 (5.5%) | 1022 (93.8%) | 7 (.6%) | 1089 |
| Edinburg Attendance Center (1-12) | 0 | 392 (100%) | 0 | 392 |
| Lena Attendance Center (1-8) | 0 | 137 (100%) | 0 | 137 |
| Walnut Grove Attendance Center (1-12) | 0 | 198 (100%) | 0 | 198 |
| Murphy Attendance Center (1-12) | 520 (100%) | 0 | 0 | 520 |
| Jordan Attendance Center (1-12) | 483 (100%) | 0 | 0 | 483 |
| Greer Attendance Center (1-12) | 490 (100%) | 0 | 0 | 490 |
| Totals | 1,553 (46.9%) | 1,749 (52.9%) | 7 (.2%) | 3,309 |

Exhibit B.

The District has operated desegregated schools since entry of the 1969 Plan. The following table shows the 2025-2026 racial breakdown of students in District schools.

| SCHOOL | BLACK | WHITE | OTHER | TOTAL |
|---|---|---|---|---|
| Leake Central Elementary (PreK-5) | 470 (55%) | 132 (15.4%) | 253 (25.6%) | 855 |
| Leak County Elementary (PreK-6) | 227 (67.7%) | 84 (25.1%) | 24 (7.2%) | 335 |
| Leake Central Junior High (6-8) | 222 (59.6%) | 49 (13.2%) | 101 (27.2%) | 372 |
| Leake Central High School (9-12) | 316 (57.1%) | 88 (15.9%) | 149 (27%) | 553 |
| Leake County High School (7-12) | 179 (74.6%) | 34 (14.2%) | 27 (11.2%) | 240 |
| Totals | 1,414 (60%) | 387 (16.4%) | 554 (23.5%) | 2,355 |

As the chart above indicates, the racial composition of all District schools is within +/- 15% of the District-wide racial composition, and none of the five schools is a one-race school.

For the 2026-2027 school year, the District plans to reconfigure its schools to create a county-wide junior high at Leake Central Junior High and a county-wide high school at Leake Central High School. This will further ensure continued desegregation because all students in each grade from 7 through 12 will attend the same school and, therefore, there can be no segregation of students by race. The District also plans to close the current Leake County Elementary building and re-house those students in grades kindergarten through five at the existing Leake County High School facility. Finally, the District will create a county-wide Pre-kindergarten at Leake Central Elementary School.

The following table shows the 2025-2026 racial breakdown of certified staff in District schools.

| SCHOOL | BLACK | WHITE | TOTAL |
|---|---|---|---|
| Leake Central Elementary (PreK-5) | 53% | 47% | 100% |
| Leak County Elementary (PreK-6) | 46.7% | 53.3% | 100% |
| Leake Central Junior High (6-8) | 57.9% | 42.1% | 100% |
| Leake Central High School (9-12) | 40.5% | 59.5% | 100% |
| Leake County High School (7-12) | 72% | 28% | 100% |
| Totals | 51.7% | 48.3% | 100% |

Because the District does not operate racially identifiable schools, the racial composition of certified staff at its schools cannot reinforce racial identifiability. The District also provides transportation, facilities, and extracurricular activities on a nondiscriminatory basis to all of its students regardless of race. The District has received no complaints alleging discrimination in these areas.

The United States has actively monitored the District's implementation of the operative Court Orders and issued requests for information to supplement the information provided by the District. The District has cooperated with the United States' monitoring efforts and responded to the United States' requests for information. The United States has fully and carefully reviewed and analyzed the District's responses.

In the over 60 years since this case has been opened, the District has demonstrated successful implementation of the provisions of the operate Court Orders and has satisfied its broader desegregation obligations. It has shown a good faith commitment to the Court's Orders and to those provisions of the law and

Constitution that predicated judicial intervention.[1] The District has demonstrated its full and good faith compliance for a reasonable period of time and eliminated the vestiges of the prior *de jure* system to the extent practicable. The District has achieved unitary status with respect to all areas of compliance, operating an integrated unitary system for years, and has thus remedied its constitutional violation.

## III. Conclusion

"From the very first, federal supervision of local school systems was intended as a *temporary* measure to remedy past discrimination." *Brd. of Education of Okla. City Pub. Schs. v. Dowell,* 498 U.S. 237, 247 (1991) (emphasis added); *see also Lee v. Talladega Cnty. Bd. of Education,* 963 F.2d 1426, 1429 (11th Cir. 1992) (citation omitted) ("Injunctive decrees in school desegregation cases were never intended to operate in perpetuity."). This is the case because "[n]o single tradition in public education is more deeply rooted than local control over the operation of schools," *Milliken v. Bradley,* 418 U.S. 717, 741 (1974), and also because it was never the purpose of the federal courts' desegregation jurisprudence to "condemn a school district, once governed by a board which intentionally discriminated, to judicial tutelage for the indefinite future." *Dowell,* 498 U.S. at 249. It is important to return schools to local control "at the earliest practicable date . . . to restore their true accountability in our governmental system." *Freeman v. Pitts,* 503 U.S. 467, 490 (1992).

---

[1] See Exhibit C, Certified Faculty Assignment for the 2025-2026 school year.

When local school authorities demonstrate they have complied in good faith with a district court's desegregation decree and that vestiges of their prior illegal racial discrimination have been eliminated to the extent practicable, the school system has attained unitary status, and there is no longer a need for the court to retain jurisdiction and control of the district. *See Lee,* 963 F.2d at 1429 (citing *Dowell,* 498 U.S. at 247) (dissolution of injunction appropriate when school has attained unitary status because of the "limited nature of a federal court's remedial powers as well as the fundamental limitations of federalism"). Thus, the court "must return control over the[] school system to the local school authorities." *Id.* at 1430; *cf. United States v. Montgomery Cnty. Board of Education,* No. 3:67cv20-MPM, ECF No. 71 (N.D. Miss. Feb. 4, 2026) (declaring Winona-Montgomery Consolidated School District fully unitary and dismissing with prejudice). The Court should do so here.

Accordingly, the District requests that the Court declare the Leake County School District fully unitary, dissolve all existing Orders and remaining injunctions against the District, and dismiss this case with prejudice.

Respectfully submitted, this 28th day of July, 2026.

**LEAKE COUNTY SCHOOL DISTRICT**

/s/ *John S. Hooks*

OF COUNSEL:

John S. Hooks
MS Bar No. 99175
Adams and Reese LLP
1018 Highland Colony Pkwy., Suite 800
Ridgeland, MS 39157
Phone: (601) 353-3234
Email: John.Hooks@arlaw.com

And

Dexter C. Nettles, Jr.
Nettles & Rhea
117 North Van Buren St.
Carthage, MS 39051
Phone: (601) 267-8404
Email: dexternettles@bellsouth.net

## CERTIFICATE OF SERVICE

I, John Hooks, certify that I have this day filed a true and correct copy of the above document with the Clerk of Court via the CM/ECF system, which caused notice of filing to be served on all counsel of record.

Dated: July 28, 2026.